IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CHARLES ROBERT LEE FUTCH, | |
| Plaintiff, | CIVIL ACTION NO.: 4:22-cv-293 |
| v. | |
| CHIEF MATT LIBBY; and THE CITY OF PORT WENTWORTH, | |
| Defendants. | |

**O R D E R**

Plaintiff Charles Robert Lee Futch sued the City of Port Wentworth and Police Chief Matt Libby alleging that Defendants, among other things, violated Plaintiff's rights under the Equal Protection Clause and the Due Process Clause when they terminated Plaintiff's employment following his alleged involvement in an altercation at a bar in Hinesville. (Doc. 14.) Presently before the Court is Defendants' Motion for Summary Judgment, in which they argue, among other things, that Plaintiff has produced no evidence of racial discrimination and that he was not entitled to due process protections before his termination. (Doc. 27.) Plaintiff filed a Response, (doc. 35), and Defendants filed a Reply, (doc. 37). For the reasons and in the manner explained below, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment, (doc. 27).

BACKGROUND

I.      The September 17, 2020, Incident

In the early hours of September 18, 2020, Lieutenant Dill of the Hinesville Police Department ("HPD") called the Port Wentworth Police Department ("PWPD") to speak to the

on-shift supervisor, Corporal Aaron Green, concerning the conduct of a PWPD police officer, Charles Robert Lee Futch (Plaintiff), during an incident that had occurred shortly before midnight.  (Doc. 28-5, p. 8; doc. 29-2, pp. 11–12; see doc. 28-3.)  The phone call was recorded on Green's body-worn camera.  (See doc. 28-3.)  In the phone call, Dill informed Green that there had been a shooting at a sports bar in Hinesville, (id. at 00:55–01:05), and that Plaintiff interfered with the arrest of the shooter, (id. at 01:15–2:08).

Dill stated that Plaintiff identified himself to the officers on scene as a police officer with PWPD.  (Id. at 02:12–02:28.)  Dill relayed that officers told Plaintiff to step back after he was "verbally abusive toward the shooting suspect," stating that if the HPD "didn't do anything" he would get his gun "because [he was] a police officer too" and would "take care of" the suspect. (Id. at 02:32–02:58.)  Dill further described Plaintiff as being intoxicated, (id. at 03:07–03:09), and notified Green that, if there had been more officers on scene, Plaintiff would have been ben arrested for his behavior.  (Id. at 03:26–03:35.)  Dill also informed Green that once the shooting victim had been taken to Liberty Regional Hospital, many people from the bar loitered in the hospital parking lot, and another fight broke out.  (Id. at 04:00–04:40.)  Dill relayed that Plaintiff allegedly hit a woman in the parking lot, and HPD was now investigating Plaintiff for simple battery.  (Id. at 04:45–5:30.)

## II.   PWPD Investigation and Plaintiff's Termination

Green then contacted Major Bradwick Lee Sherrod at PWPD at around 2:53 a.m. on September 18, 2020, to relay the information he received from Dill in the phone call.  (Doc. 28-5, p. 8.)  Sherrod reviewed Green's body-camera footage of the phone call sometime that morning.  (Doc. 35-1, p. 13; doc. 29-2, pp .14–15.)  Sherrod then spoke in person to Chief of Police Matt Libby and played the recorded phone call for him.  (Doc. 35-1, p. 13; doc. 29-1, p.

2

12–13.) Libby testified that he instructed Sherrod to "obtain copies of the reports and any videos that Hinesville may have, as well as make contact with . . . [Plaintiff] so [they] could get him into the office and interview him." (Doc. 29-1, p. 24.) Sherrod testified that he then contacted HPD to request "everything they had" on Plaintiff, and he spoke to an HPD officer about the incident. (Doc. 29-2, p. 36.) Sherrod testified that he received copies of the police reports related to the incident via email from HPD that same day. (Id. at p. 14; see doc. 28-1.)[1] Sherrod also reviewed body-camera footage provided by HPD, although he does not recall exactly when he received it. (Doc. 35-1, p. 15.)

At some point on September 18, 2020, Sherrod prepared a written recommendation for Plaintiff's termination. (Id.) Under "reasons for disciplinary action," Sherrod included, among other things, "[t]hreating [sic] to . . . get his [g]un after identifying himself as a [PWPD] Officer," as well as "[b]eing intoxicated, obstructing justice, and interfering with the apprehension of a suspect." (Doc. 28-5, pp. 9–10.)

At Libby's behest, Sherrod made several attempts to reach Plaintiff on September 18, 2020, to coordinate a meeting. (Doc. 35-1, p. 15.) Sherrod eventually got in touch with Plaintiff, and Plaintiff agreed to come in for a discussion. (Id. at p. 16.) The meeting, which was attended by Plaintiff, Sherrod, and Libby, was recorded on a body-camera. (Id.; see doc. 28-4.)[2] During

---

[1] Plaintiff objects that Sherrod could not have received the police reports on September 18, 2020, because "[t]he police report charging . . . [Plaintiff] with terroristic threats and obstructing law enforcement officers wasn't written until 09/21/2020 at 11:19:24 a.m." (Doc. 35-1, pp. 14–15.) The date Plaintiff refers to states that it is the "Print Date" of the document, but the report itself is dated September 17, 2020. (See doc. 28-1, pp. 4–5.) Even construing the evidence in favor of Plaintiff, the Court cannot discredit based solely on the "Print Date" the evidence that Sherrod reviewed the report on September 18.

[2] Plaintiff objects to the use of this video because the audio "is too faint" and because he "should have been read his Miranda Rights before being interviewed." (Doc. 35-1, p. 16.) This argument is bizarre. First, Plaintiff provides no reasons why he should have been Mirandized. PWPD was never investigating Plaintiff for a crime, and Plaintiff was never detained by PWPD. This was a hearing regarding Plaintiff's employment at PWPD, and the Court is unaware of any reason or authority that a Miranda warning would

the meeting, Libby asked Plaintiff to explain what happened the previous night, and Plaintiff admitted that he had gotten "heated" and "pissed off" after his friend was shot during a bar fight. (Doc. 35-1, p. 17.)  Plaintiff acknowledged that he "went off," but claimed that when officers told him to leave, he complied. (Id.)  Plaintiff acknowledged that he was present when a woman was assaulted in the hospital parking lot, although he denied that he was responsible for the assault. (Id.)

Libby informed Plaintiff that the information that PWPD had received from HPD was "a little bit different," and that he had been captured on an HPD body camera engaging in conduct that would have led to his arrest had sufficient HPD personnel been available. (Doc. 28-4, 05:20–05:35.)  Libby then read Plaintiff an HPD report with information contradicting Plaintiff's version of events. (Doc. 35-1, p. 19; see doc. 28-4, 07:57–08:20.)  Libby asked Plaintiff whether it was possible that he was intoxicated and thus could not fully remember what happened, to which Plaintiff responded, "Yes sir." (Doc. 28-4, 08:22–08:28.)  Libby then informed Plaintiff that his employment was terminated effective immediately. (Id. at 08:28–08:32.)

### III.  Post-Termination Events

On September 21, 2020, Libby drafted a written notice of Plaintiff's termination and appeal rights. (Doc. 35-1, p. 21.)  That letter was mailed to Plaintiff at his place of residence, but he never signed for it. (Id.)  Ultimately, it was returned to the City as "unclaimed." (Id.)  Plaintiff claims that he went to City Hall sometime during the week after his termination, seeking to file an appeal. (Id.)  According to Plaintiff, a woman at City Hall, whom he believed was the

---

be required in this situation, much less that the lack of a Miranda warning warrants exclusion of a statement in a civil case.  Plaintiff likewise provides no authority as to why a video should be excluded solely because the audio is faint, particularly since the Court has reviewed the video and can clearly hear Plaintiff's responses to the questions asked.  Absent any real objection from Plaintiff, the Court sees no issue in considering this evidence.

human resources supervisor, told him it was "too late" for him to file an appeal, but also told him that he would "have to appeal through the city manager." (Id. at pp. 21–22.) Plaintiff states that he made a few unanswered calls to the city manager but never left a voicemail. (Id. at p. 22.) Plaintiff never made a written request for an appeal. (Id.)

On September 21, 2020, Plaintiff was arrested by the HPD on charges of terroristic threats and obstruction in connection with the events of September 17, 2020. (Id. at p. 20.) Plaintiff ultimately pleaded guilty to a lesser charge of disorderly conduct under City of Hinesville ordinances. (Id. at pp. 20–21.)

## IV.   Procedural History

Plaintiff sued Libby and the City on December 13, 2022. (Doc. 1.) He brings claims against Libby for a violation of O.C.G.A. § 36-33-4, discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, and punitive damages. (Doc. 14, pp. 6–12.) He also brings three claims against the City under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Equal Protection Clause, and the Due Process Clause. (Id. at pp. 12–17.) Defendants filed this Motion for Summary Judgment arguing, among other things, that Plaintiff has produced no evidence that he was racially discriminated against or that his procedural rights were violated. (See generally doc. 27.) Plaintiff filed a Response, (doc. 35), and Defendants filed a Reply, (doc. 37).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011)

5

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove its case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

### I. Racial Discrimination Claims

Defendants first move for summary judgment on Plaintiff's various claims of racial discrimination under the Equal Protection Clause, Section 1981, and Title VII, arguing that Plaintiff has failed to submit any evidence of discrimination. (Doc. 27, pp. 10–20.) To begin with, "discrimination claims . . . brought under the Equal Protection Clause, [Section] 1981, or Title VII . . . are subject to the same standards of proof and employ the same analytical framework." Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Because these statutes have the same requirements of proof and use the same analytical framework, the Court will address the Title VII claim with the understanding that the analysis also applies to the Equal Protection and Section 1981 claims. See Thompson v. Tyson Foods, Inc., 939 F. Supp. 2d 1356, 1363 (M.D. Ga. 2013).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In cases such as this one, which lack direct evidence of discrimination, courts rely on the burden-shifting framework set out in McDonnell

Douglas Corporation v. Green, 411 U.S. 792 (1973). Flowers v. Troup Cnty., Sch. Dist., 803 F.3d 1327, 1335 (11th Cir. 2015).

Under the McDonnell Douglas framework, a plaintiff can make out a prima facie case of employment discrimination by showing that: (1) he is a member of the protected class; (2) he was qualified to do the job; (3) he was subject to an adverse employment action; and (4) he received less favorable treatment than a similarly-situated employee outside of his protected class. See Flowers, 803 F.3d at 1336. If the plaintiff makes this showing, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. Id. If the employer does so, the plaintiff must demonstrate that the employer's proffered reason is merely a pretext for discrimination. Id.

    **A.**    **Plaintiff Has Failed to Make a Prima Facie Case of Discrimination.**

Defendants argue that Plaintiff cannot make a prima facie case because he cannot identify a similarly situated comparator outside his class who was treated more favorably.[3] (Doc. 27, pp. 11–14.) To show that employees are similarly situated, a plaintiff must show he and his alleged comparator(s) are "similarly situated in all material respects." Lewis v. City of Union City, 918 F.3d 1213, 1224 (11th Cir. 2019). Comparators need not be identical, but they will generally have "engaged in the same basic conduct (or misconduct) as the plaintiff"; "been subject to the same employment policy, guideline, or rule as the plaintiff"; "been under the jurisdiction of the same supervisor as the plaintiff"; and "share the plaintiff's employment or disciplinary history." Id. at 1227–28.

---

[3] Defendants concede, for purposes of this Motion, that Plaintiff can satisfy the other elements for a prima facie case. (Doc. 27, p. 12.)

Plaintiff tries to establish a similarly situated comparator in Libby and a former officer, Jacob Kersey. (Doc. 35, pp. 7–8.) According to Plaintiff, these men are similarly situated because all engaged in the "First Amendment right to free speech." (Id. at p. 8.) Kersey posted a Facebook message in which he made a statement about homosexual marriage. (Doc. 35-10, p. 1.) The post was reported, and Kersey was placed on paid leave pending an investigation. (Id.) Kersey was ultimately found to not be in violation of PWPD policies but was warned about future engagement in similar speech. (Id.) Libby testified that he "spoke ill of a counsel [sic] member or [had] some issues with counsel [sic]" and was ultimately terminated (though he was later reinstated). (Doc. 29-1, pp. 40–41.) Neither of these situations, however, provides Plaintiff with a similarly situated comparator who was treated differently.

First, the Court is confounded by Plaintiff's offering of Libby as a comparator.[4] He argues that they are similarly situated, that they both engaged in protected speech, and—notably—that they both were unjustly fired. (See doc. 35, p. 8.) The purpose of offering a comparator is to show that, all things equal but for their protected class, the similarly situated employee was treated *differently* from the plaintiff. Taking Plaintiff's argument at face value, the Court fails to see how an officer's unjust termination for engaging in political speech shows treatment of a comparator disparate from the treatment of Plaintiff.[5]

---

[4] That Libby himself was Plaintiff's supervisor further cuts against his relevance as a valid comparator. "[A] similarly situated comparator will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff." Lewis, 918 F.3d at 1227.

[5] Insofar as Plaintiff may be arguing that he was treated differently because Libby was ultimately reinstated (which, notably, Plaintiff does not mention in his briefing), Plaintiff has produced no evidence about Libby's reinstatement, nor has Plaintiff shown that he ever attempted to be reinstated. Accordingly, such an argument—had one been made—would not sway the Court.

As for Kersey, he posted a Facebook post that was investigated but determined to not constitute a violation of department policy. Plaintiff, on the other hand, was fired after PWPD learned that he reportedly engaged in criminal obstruction and terroristic threats, that he was being investigated for criminal battery, and that he was likely to be arrested by HPD. Plaintiff further admitted, before termination, to having been intoxicated, having been "heated" and having "gone off" in the presence of officers at a crime scene, and to not remembering the events in full. He was terminated not for any "protected speech" but for alleged criminal conduct. This is a far cry from showing that Kersey was "similarly situated in all material respects." Lewis, 918 F.3d at 1224. The relevant inquiry, at the very least, would be whether another officer at PWPD was accused of similar criminal conduct and was treated differently than Plaintiff. Plaintiff has produced no such evidence. Absent such comparator evidence, Plaintiff has failed to establish a prima facie claim of racial discrimination.

**B.     Plaintiff has not Rebutted Defendants' Showing that the Termination was for a Legitimate, Non-Discriminatory, and Non-Pretextual Reason.**

Even if Plaintiff could establish a prima facie case of discrimination, Defendants are nonetheless entitled to summary judgment because Plaintiff cannot show Defendants' legitimate, nondiscriminatory reasons for his termination were merely pretext for racial discrimination. "An employer's burden to articulate a non-discriminatory reason for [an adverse employment action] is a burden of production, not of persuasion." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005). This burden "involves no credibility determination" and only requires the employer to state "a clear and reasonably specific non-discriminatory basis" for its actions. Id. at 769–70 (internal quotations omitted); Smith v. Horner, 839 F.2d 1530, 1537 (11th Cir. 1988) (defendant's burden is "exceedingly light" and need only "produc[e] evidence of a legitimate rationale for its decision").

Defendants contend that Plaintiff was fired for his conduct in the September 17, 2020, incident and because HPD intended to seek warrants against Plaintiff for his conduct and investigate him for simple battery. An employer, and certainly a police department, could be motivated to terminate an employee based on potential criminal conduct. Because this connotes a legitimate rationale unrelated to race, Defendants have discharged their "exceedingly light" burden of articulating a legitimate nondiscriminatory reason. Smith, 839 F.2d at 1537; see Brown v. Davis, 684 F. App'x 928 (11th Cir. 2017) (even where charges were ultimately dropped, "simply being arrested . . . without looking into the actual merits of that arrest, was a plausible policy for termination of a police officer—i.e., to avoid bringing 'discredit' to the police agency . . . in the eyes of the public"); McDonnell Douglas, 411 U.S. at 803–04 (plaintiff's involvement in "deliberate, unlawful activity" was a legitimate nondiscriminatory reason for refusing to hire him).

Because Defendants have provided a nondiscriminatory reason for Plaintiff's dismissal, the burden shifts back to Plaintiff to produce evidence of pretext "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). "To show pretext, [an employee] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (citation omitted). But an employee is "not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030. Rather, "an employee must meet [the employer's given] reason

head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

Plaintiff has failed to meet his burden. In support of his pretext argument, Plaintiff summarily declares that, "[t]o decide if [Defendants] were acting with racial animus . . . , the Court should ask whether a reasonable police officer would believe there was arguable probable cause to arrest . . . [Plaintiff] after . . . Libby and . . . Sherrod interviewed him." (Doc. 35, p. 9.) Plaintiff then spends pages grappling with whether, when they terminated his employment, Libby and Sherrod had "arguable probable cause" to believe that Plaintiff committed the offenses alleged by HPD. (Doc. 35, pp. 9–12.) In doing so, Plaintiff neglects to explain how this purported reason would qualify as false or how it was otherwise motivated by racial animus. Taking Plaintiff's argument at face value, the Court does not see how, by relying on HPD's word that probable cause existed for the charges (without verifying it themselves), Libby and Sherrod demonstrated potential racial animus against Plaintiff when they terminated him. Indeed, Plaintiff's entire pretext argument seems to just be an airing of his frustrations with the charges brought against him, as it makes no mention of race at all. In other words, Plaintiff confines his argument to "simply quarreling with the wisdom" of Defendants' reliance on HPD's allegations, and he fails to explain how this was a mere pretext for racial discrimination. Chapman, 229 F.3d at 1030. "[E]mployers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as [the] action is not for a discriminatory reason." Flowers, 803 F.3d at 1338 (internal quotation marks omitted). Plaintiff has provided no evidence that the decision to terminate him was for a discriminatory reason.

Accordingly, because Plaintiff has failed to make a prima facie case of discrimination or otherwise produce any evidence of racial discrimination, the Court **GRANTS** Defendants'

Motion for Summary Judgment on all of Plaintiff's discrimination claims (Counts Two, Three, Four, and Five).[6]

## II.  Procedural Due Process Claim

Defendants next move for summary judgment on Plaintiff's Procedural Due Process claim against the City (Count Six).[7]  (Doc. 27, pp. 20–24.)  The Due Process Clause requires "that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  A Section 1983 claim alleging a due process violation requires proof of three elements: "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011) (quotation marks omitted).  Defendants argue that Plaintiff has failed to show a genuine issue of material fact as to the first and third elements.

Defendants first argue that because Plaintiff was an at-will employee, he had no protected property interest in his continued employment.  (Doc. 27, pp. 21–22.)  In his Response, Plaintiff does not contest that he was an at-will employee but still argues—with no citation to any supporting authority—that he had a property interest in his employment.  (Doc. 35, pp. 13–14.)  This is incorrect.

"To obtain a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of

---

[6] Because Plaintiff's discrimination claims fail, the Court need not address Defendants' argument that Libby is entitled to qualified immunity against such claims. (Doc. 27, pp. 18–20); see Brown, 684 F. App'x at 937 n.6.

[7] Defendants also note that the claim stated in the Amended Complaint fails to allege facts that would amount to a due process violation and simply repeats the same allegations that were pled for the racial discrimination claims. (Doc. 27, p. 20; see doc. 14, pp. 15–17.)

entitlement to continued employment." Warren v. Crawford, 927 F.2d 559, 562 (11th Cir. 1991). Under Georgia law,[8] "a public employee has a property interest in employment when that employee can be fired only for cause." Wilson v. City of Sardis, 590 S.E.2d 383, 385 (Ga. Ct. App. 2003). That said, absent "a contractual or statutory 'for cause' requirement," the employee may be terminated at any time, for any reason. Id.

Plaintiff admits that he was an at-will employee at the time of his termination and has provided no contractual or statutory authority providing that he could only be terminated for cause. (Doc. 35, p. 14; see doc. 29-3, pp. 47–48.) The only evidence that Plaintiff cites is the City's human resources policy stating that an employee is entitled to an appeal. (Doc. 35, p. 14; see doc. 35-7, p. 75.) This fails to establish that Plaintiff had a protected property interest in his employment sufficient to trigger the protection of the Due Process Clause. Because the record contains no agreement indicating that Plaintiff could be terminated only for cause, no reasonable fact-finder could conclude from the evidence that Plaintiff was anything but an at-will employee. Accordingly, Plaintiff has failed to show he had any legitimate property interest in his continued employment. See Warren, 927 F.2d at 563–64 (guarantee of notice and a hearing before termination under the employee handbook did not create a property interest under the Due Process Clause); Cudger v. Stidwell, No. 1:17-CV-02182, 2020 WL 13660327, at *4 (N.D. Ga. Mar. 11, 2020) (pointing to appeals process insufficient to establish procedural due process claim for at-will employee fired because of his arrest); Moultrie v. Smith, No. 3:14-CV-00020-TCB, 2015 WL 12552095, at *6–7 (N.D. Ga. Sept. 22, 2015) (granting summary judgment on due

---

[8] "State law determines whether a public employee has a property interest in his or her job." Warren, 927 F.2d at 562.

process claim where plaintiff failed to submit evidence of a written agreement that she could only be fired for cause).

Defendants also argue that even if Plaintiff could show a property interest, he has not established that he was denied due process in his termination.[9] (Doc. 37, pp. 15–16.) The Court agrees. Plaintiff was given a chance to tell his side of the story to Libby and Sherrod before his termination, at which point he admitted to some of the conduct outlined by HPD and admitted to being intoxicated and unable to remember everything. (See generally doc. 28-4.) He argues that the appeals process was not followed, but he has failed to show that he tried to file an appeal, and points only to the fact that he made a few unanswered phone calls to the City Manager but never even left a voicemail. Indeed, Plaintiff admitted that he was told he needed to contact the City Manager to appeal his termination, but he never made a written request for appeal, either to the City Manager or to anyone else. (Doc. 35-1, p. 22.) Plaintiff has submitted no other evidence that he meaningfully objected to his dismissal or the charges brought against him. In fact, Plaintiff later pleaded guilty to a disorderly conduct charge based on his behavior in Hinesville on September 17, 2020. (Doc. 35-1, pp. 20–21; see doc. 28-5, pp. 9–10.)

### III.    State Law Tort Claim

Finally, Defendants move for summary judgment on Plaintiff's claim against Libby for a continuing tort violation under O.C.G.A. § 36-33-4 (Count One). (Doc. 27, p. 24.) O.C.G.A. § 36-33-4 concerns personal liability for municipal officers and provides that: "[O]fficers of a municipal corporation shall be personally liable to one who sustains special damages as the result

---

[9] Defendants additionally seek summary judgment as to a potential due process claim for reputational harm. (Doc. 27, pp. 22–23.) Because Plaintiff does not address this argument, and because it is unclear from the face of the Amended Complaint that Plaintiff has asserted such a claim, the Court assumes that Plaintiff is not asserting a due process claim under a theory of reputational harm and accordingly declines to address this argument as moot.

of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law." O.C.G.A. § 36-33-4.

District courts are authorized to "decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Eleventh Circuit has noted that "if the federal claims are dismissed prior to trial, [federal law] strongly encourages or even requires dismissal of state claims." Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999).

Because the Court has already found that Plaintiff has failed to submit evidence raising a genuine issue of material fact on any of his federal claims, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim under O.C.G.A. § 36-33-4. See Ga. Elec. Life Safety & Sys. Ass'n, Inc. v. City of Sandy Springs, No. 1:18-CV-1041-AT, 2018 WL 10753067 (N.D. Ga. Dec. 12, 2018), *aff'd*, 965 F.3d 1270 (11th Cir. 2020) (declining to exercise supplemental jurisdiction over plaintiff's state law claims under O.C.G.A. § 36-33-4 where federal claims were properly dismissed); LHR Farms, Inc. v. White Cnty., No. 2:09-CV-00177-WCO, 2012 WL 12932609, at *27 (N.D. Ga. Mar. 22, 2012) (declining to exercise supplemental jurisdiction over claim under O.C.G.A. § 36-33-4 where federal claims had been dismissed because "[h]olding a trial on purely state-law claims would make little sense"). Accordingly, this claim is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment. (Doc. 27). The Court finds that Plaintiff has failed to submit evidence sufficient to raise a genuine issue of material fact as to whether he was discriminated against or deprived of his procedural due process rights when he was terminated for his conduct in the

September 17, 2020, incident. Additionally, the exercise of supplemental jurisdiction over Plaintiff's state law claim under O.C.G.A. § 36-33-4 is improper here where all of the federal claims have been dismissed. Accordingly, the Court grants summary judgment in Defendants' favor as to Plaintiff's federal claims asserted in Counts Two through Six, dismisses without prejudice Plaintiff's state claims asserted in Count One, and **DIRECTS** the Clerk of Court to **CLOSE** this case.[10]

**SO ORDERED**, this 17th day of July, 2024.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[10] Because the Court grants summary judgment on Plaintiff's underlying federal claims, his requests for punitive damages, to the extent that they are derivative of his federal claims, likewise cannot survive summary judgment. Under Georgia law, "[a] punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304 (11th Cir. 2009). Because the Court has dismissed Plaintiff's state law claims without prejudice, to the extent his punitive damages claims are derivative of his state claims, the Court dismisses those punitive damages claims without prejudice.